UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ASHLEA M. LAUGHLIN,            )
                                )
    Petitioner,                 )
                                )
v.                              )     No. 2:17-CV-00085-JRG-CRW
                                )
UNITED STATES OF AMERICA,       )
                                )
    Respondent.                 )

## **MEMORANDUM OPINION**

This matter is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Her Sentence [Doc. 1], the United States' Response [Doc. 3], and Petitioner's Reply [Doc. 6]. For the reasons herein, the Court will deny Petitioner's motion.

## I.   BACKGROUND

In January 2011, Petitioner Ashlea M. Laughlin pleaded guilty to aiding and abetting the kidnapping of a minor, in violation of 18 U.S.C. §§ 2, 1201(a)(1), (g)(1)(A). [Superseding Indictment, Doc. 43, at 1–2, No. 2:10-CR-00074; Plea Agreement, Doc. 50, at 1, No. 2:10-CR-00074]. The Court sentenced her to a seventy-two-month term of imprisonment and a three-year term of supervised release. [J., Doc., Doc. 110, at 2–3, No. 2:10-CR-00074]. The Court ordered her not to "commit another federal, state, or local crime" while on supervised release. [*Id.* at 3]. In addition, the Court imposed several conditions of supervised release—though none of them included the requirement that she register as a sex offender under either the Sex Offender Registration and Notification Act ("SORNA"), 34 U.S.C. § 20901 *et seq.*, or the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act ("Tennessee Sex Offender Act"), Tennessee Code Annotated § 40-39-201 *et seq.*

According to Ms. Laughlin, however, the United States Probation Office informed her, upon her release into the community in 2016, that she had to register as a sex offender "with the state of Tennessee," in compliance with the Tennessee Sex Offender Act. [Pet'r's Mot. at 4]. Ms. Laughlin asserts that the Probation Office "ordered" her to register under this statute after it contacted the Tennessee Bureau of Investigation ("TBI") and obtained "an advisory opinion." [*Id.* at 5–6]. Although Ms. Laughlin did register under the Tennessee Sex Offender Act, she ultimately violated other conditions of her supervised release, on multiple occasions, [*id.* at 4], prompting the Court to hold two revocation hearings. At those hearings, Ms. Laughlin objected to the "addition of the supervised release condition" requiring sex offender registration. [Pet'r's Obj., Doc. 210, at 1, No. 2:10-CR-00074].

The events of those hearings are not within the four corners of Ms. Laughlin's pending petition for relief under 28 U.S.C. § 2255, but they remain a source of useful background information for it. At the hearings, the Court learned Ms. Laughlin's probation officer sought the TBI's opinion because she was concerned that Ms. Laughlin might be violating state law by not registering as a sex offender, in contravention of the Court's mandatory condition that she not commit a federal, state, or local crime. [Order, Doc. 238, at 2, No. 2:10-CR-00074]. The probation officer also requested the United States Attorney's Office's opinion on the same issue. [*Id.*]. In response, the United States Attorney's Office, in a written memorandum, informed the probation officer of its position that neither federal law nor state law required Ms. Laughlin to register as a sex offender. [USAO's Memo., Doc. 234-2, at 3]. The TBI, however, arrived at the opposite conclusion. [TBI E-mail, Doc. 234-1, at 1].

According to Greene County's Sex Offender Administrator, Angie Weems, from whom the Court received testimony, she "was informed by TBI that the defendant[] w[as] required

to register under the TBI's interpretation of the law because [her] offense involved kidnapping." [Order at 2]. Although she recalled cases in which a state judge had not required a defendant to register as a sex offender even though the conviction was for a registerable offense, she could not guarantee that the TBI would follow a judicial order, whether state or federal, if it was inconsistent with its own opinion. [*Id.* at 2–3]. So based on the TBI's advisory opinion, the probation officer had told Ms. Laughlin that if she did not register as a sex offender, the TBI might charge her with failure to register, a state crime. [*Id.* at 2].

The Court ultimately denied Ms. Laughlin's objection to the TBI's requirement that she register as a sex offender. [*Id.* at 6]. Although the Court acknowledged that Ms. Laughlin was under no court-ordered mandate to register as a sex offender, it interpreted her objection as a request for a judicial advisory opinion, which the Court lacks authority to issue. [*Id.* at 5]. In potentially rendering an advisory opinion, the Court also expressed concerns about imposing on the State of Tennessee's sovereign right to interpret and enforce its own laws. [*Id.*]. And lastly, the Court viewed the probation officer's actions, in light of the TBI's advisory opinion, as a reasonable and legitimate attempt to ensure Ms. Laughlin's compliance with the Court's mandatory condition that she not commit a federal, state, or local crime. [*Id.*].[1]

As a registered sex offender, Ms. Laughlin now details the struggles she has experienced in trying to rebuild her life outside of prison. She states that she cannot return to a local halfway house for transitional living because it is located within 1,000 feet of a school, daycare, or park. [Pet'r's Letter, Doc. 263-2, at 1, No. 2:10-CR-00074]. She also claims that she cannot live with

---

[1] The Court entered two revocation judgments against Ms. Laughlin. [Revocation J., Doc. 237; Agreed Revocation J., Doc. 256]. In neither revocation judgment did the Court require her registration as a sex offender under SORNA or the Tennessee Sex Offender Act, and in one of the revocation judgments, the Court stated that it "is not requiring that the defendant register with the state sex offender registration agency." [Rev. J. at 4].

her family because they have minor children in their homes. [*Id.*]. She fears she will become homeless and relapse into drug use. [*Id.*]. Further complicating matters, she maintains that she has struggled to find employment. She says that even when she succeeds in locating employers not within 1,000 feet of a school, daycare, or park, "they no longer want anything to do with" her once they learn she is a registered sex offender. [*Id.*].

Relying on § 2255, Ms. Laughlin now moves the Court, through the Federal Defender Services of East Tennessee, to vacate, set aside, or correct "the addition of a supervised release condition that she be required to register as a sex offender for her federal conviction." [Pet'r's Mot. at 1]. She opposes this condition because it did not appear in her plea agreement, the presentence investigation report, the Court's criminal judgment, or in any modification of her conditions of supervised release. [*Id.* at 1, 3]. In response to her § 2255 petition, the Court held a hearing, at which it heard oral argument from both parties. The Court is now prepared to rule on Ms. Laughlin's petition.

## II. STANDARD OF REVIEW

Under § 2255, "[a] prisoner in custody under sentence of a [federal] court . . . claiming the right to be released . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). A court must vacate and set aside a sentence if it concludes that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." *Id.* § 2255(b). To warrant relief for a denial or infringement of a constitutional right, a petitioner has to establish an "error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*,

4

165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)). To warrant relief for a non-constitutional claim, a petitioner must establish that a fundamental defect in the proceeding resulted in a complete miscarriage of justice or an egregious error that deprived him of "the rudimentary demands of fair procedure." *Reed v. Farley*, 512 U.S. 339, 354 (1994); *see Grant v. United States*, 72 F. 3d 503, 505–06 (6th Cir. 1996).

In sum, "[a] prisoner seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quotation omitted). In support of one of these three bases for relief, a petitioner's allegations must consist of sufficient facts showing she is entitled to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972). "Generally, courts have held that 'conclusory allegations alone, without supporting factual averments, are insufficient to state a valid claim under § 2255.'" *Jefferson v. United States*, 730 F.3d 537, 547 (6th Cir. 2003) (quotation and citation omitted). And similarly, if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," she will not receive an evidentiary hearing. *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003) (quoting *Fontaine v. United States*, 411 U.S. 213, 215 (1973)).

A petitioner has the burden of proving that "an error has occurred that is sufficiently fundamental to come within" one of the three "narrow limits" for § 2255 relief. *United States v. Addonizio*, 442 U.S. 178, 185 (1979); *see Pough*, 442 F.3d at 964. The standard that governs collateral review under § 2255, as opposed to direct review on appeal, is significantly higher. *United States v. Frady*, 456 U.S. 152, 162–66 (1982); *see Hampton v. United States*, 191 F.3d 695, 698 (6th Cir. 1999) ("Habeas review is an extraordinary remedy and 'will not be allowed

to do service for an appeal.'" (quoting *Reed*, 512 U.S. at 354)). This is so because "[t]he reasons for narrowly limiting the grounds for collateral attack on final judgments are well known and basic to our adversary system." *Addonizio*, 442 U.S. at 184 (footnote omitted); *see Custis v. United States*, 511 U.S. 485, 497 (1994) ("'[I]nroads on the concept of finality tend to undermine confidence in the integrity of our procedures' and inevitably delay and impair the orderly administration of justice." (quotation omitted)); *Parke v. Raley*, 506 U.S. 20, 29 (1992) (referring to a "presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that attaches to final judgments" (quotation omitted)).

## III.  ANALYSIS

"Congress enacted SORNA to create a national system for the registration of sex offenders," *United States v. Utesch*, 596 F.3d 302, 306 (6th Cir. 2010) (citation omitted)), "in response to the vicious attacks by violent predators against" minors and young adults, 34 U.S.C. § 20901. SORNA requires a sex offender to register, and to keep her registration current, in each jurisdiction where she resides and holds employment. *Id.* § 20913(a). SORNA defines a "sex offender" as someone who commits a crime "involving kidnapping" of a minor. *Id.* § 20911(1), (5)(A)(ii), 7(A). Similarly, the Tennessee General Assembly passed the Tennessee Sex Offender Act "in the wake of the brutal kidnaping, rape, and murder of [a] seven-year-old." *Ward v. State*, 315 S.W.3d 461, 467 (Tenn. 2010). Under the Tennessee Sex Offender Act, a "sexual offender" is someone who has been convicted of "[k]idnapping, where the victim is a minor, under § 39-13-303," Tenn. Code. Ann. § 40-39-202(19), (20)(A)(vi), but a "conviction" means a judgment entered not only "by a Tennessee court" but also "by a federal court," *id.* § 40-39-202(1).

By every appearance in the record, Ms. Laughlin's registration as a sex offender took place not under SORNA but under the Tennessee Sex Offender Act—or as she words it, "with

6

the state of Tennessee." [Pet'r's Mot. at 4]. Ms. Laughlin does not assert that she had to register under SORNA,[2] and her inability to come within 1,000 feet of a school, daycare, or park is a prohibition that is specific to the Tennessee Sex Offender Act. *See* Tenn. Code. Ann. § 40-39-211(a)(1) (stating that a sex offender shall not reside or accept employment within "one thousand feet" of a "school," "day care center," or "public park"). SORNA does not contain this prohibition.[3] The Court will therefore construe Ms. Laughlin's § 2255 petition as one for relief from registration under the Tennessee Sex Offender Act.

### A. 18 U.S.C. § 2255

Again, a petitioner "seeking relief under § 2255 'must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough*, 442 F.3d at 964 (quotation mitted). Ms. Laughlin asserts that she is entitled to § 2255 relief because (1) her guilty plea was neither knowing nor voluntary, (2) her counsel was ineffective, and (3) the Probation Office "exceed[ed] [its] delegation of supervision authority" by requiring her to register as a sex offender, in violation of her rights under the Fifth and Sixth Amendments of the United States Constitution. [Pet'r's Mot. at 8; Hr'g Tr. at 5:22–25; 6:1 (on file with the Court)].

---

[2] A defendant's obligation to register under a state sex offender statute does not trigger an obligation to register under SORNA. *United States v. Felts*, 674 F.3d 599, 604 (6th Cir. 2012) (stating that "[t]he duty of an offender to register [under SORNA] is independent of whether or not the state has implemented SORNA"); *United States v. Paul*, No. 2:12-cr-0005, 2014 WL 834802, at *2 (M.D. Tenn. Mar. 4, 2014) ("[The] federal duty to register is not dependent on whether [a defendant] has a duty under state law to register. Rather, his federal duty to register is triggered because he meets SORNA's statutory definition of 'sex offender.'" (quotation omitted)).

[3] Although SORNA does not contain this same prohibition, the federal courts, under 18 U.S.C. § 3583(d), are not without license to fashion a sentence that prohibits a defendant from visiting or lingering in areas where children normally congregate. *United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012) ("[B]ecause [the defendant] was convicted of sexual enticement of a minor, prohibiting [him] from loitering near places where children congregate is reasonably related to the goal of public safety.").

Although the United States concedes that Ms. Laughlin's petition is timely under § 2255(f)'s statute of limitations, [Hr'g Tr. at 3:12–15], it argues that her petition nevertheless founders from the start because her plea agreement contains a waiver provision, in which she agreed not to collaterally attack her conviction and sentence. [United States' Resp. at 3]. "It is well settled that a defendant in a criminal case may waive 'any right, even a constitutional right,' by means of a plea agreement," *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (quotation omitted), if she enters into the waiver provision knowingly and voluntarily, *United States v. Fleming*, 239 F.3d 761, 764 (6th Cir. 2001). Ms. Laughlin's waiver provision states that she "knowingly and voluntarily waives the right to file any motions or pleadings pursuant to 28 U.S.C. § 2255," except for claims of ineffective assistance of counsel or prosecutorial misconduct. [Plea Agreement, Doc. 50, at 8, No. 2:10-CR-00074].

But Ms. Laughlin argues that this waiver provision does not prohibit her claims because she did not knowingly and voluntarily enter into the plea agreement in the first place. [Pet'r's Reply at 6]. Her argument has merit. *See In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) ("[I]n cases where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel . . . it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." (footnote and citation omitted)). The waiver provision therefore does not bar Ms. Laughlin's first two claims—her claims in which she alleges that her plea was not knowing or voluntary and that her counsel was ineffective. Although the waiver provision would appear to bar her third claim, that claim nevertheless fails on the merits.

*1. Knowing and Voluntary Guilty Plea*

Ms. Laughlin argues "[i]t cannot be said that [she] knowingly or voluntarily entered a guilty plea to the offense to which she pled if that plea is construed to have also included a requirement that she register as a sex offender," because "[t]hat added condition was never explained to her by anyone." [Pet'r's Mot. at 8]. The United States, on the other hand, contends that "information about the duration of conditions of supervised release does not need to be provided for a defendant's plea to be knowing and voluntary." [Hr'g Tr. at 21:16–18].

When a defendant pleads guilty, she "forgoes not only a fair trial, but also other accompanying constitutional guarantees." *United States v. Ruiz*, 536 U.S. 622, 628–29 (2002) (citation omitted). Those guarantees include the Fifth Amendment privilege against self-incrimination and the Sixth Amendment rights of an accused to confront her accuser and to a jury trial. *Boykin v. Alabama*, 395 U.S. 238, 243 (1969). So Ms. Laughlin, with her argument that her plea was not knowing or voluntary, is claiming that an error of constitutional magnitude blighted the underlying criminal proceeding. *See Bousley v. United States*, 523 U.S. 614, 618 (1998) ("A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent." (quotation omitted)).

A plea is knowing and voluntary only if a defendant receives "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process." *Id.* (quotation omitted). A defendant, however, "need only be aware of the direct consequences of the plea," and a district court "is under no constitutional obligation to inform the defendant of all the possible collateral consequences of the plea." *El-Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002) (quotation omitted). A collateral consequence of a plea is one that is "beyond the control and responsibility of the district court." *United States v. Rodriguez-*

*Gonzales*, 543 F. App'x 532, 533 (6th Cir. 2013) (quotation omitted). For example, common collateral consequences stem from so-called disenfranchisement statutes, which, as a result of a guilty plea, divest a defendant of her right "to vote, engage in certain businesses, hold public office, or serve as a juror." *Maleng v. Cook*, 490 U.S. 488, 491–92 (1989) (citation omitted). Along these same lines, the Sixth Circuit has held that sex offender registration is merely a collateral consequence of a guilty plea because whether a defendant "must actually register is controlled by state and federal law." *United States v. Cottle*, 355 F. App'x 18, 20 (6th Cir. 2009); *see Leslie v. Randle,* 296 F.3d 518, 522 (6th Cir. 2002) (determining that registration and notification requirements of a state's sexual predator statute were collateral consequences of a conviction).

Because sex offender registration is a collateral consequence of a guilty plea, and not a direct consequence, "district court[s] [are] not required to inform [a defendant] of [registration] for the plea to be valid." *Cottle*, 355 F. App'x at 21; *United States v. Skaggs*, No. 2:18-CR-51-RLJ-HBG, 2019 WL 6691014, at *7 (E.D. Tenn. Nov. 25, 2019) (noting that the "Sixth Circuit has concluded on several occasions that the requirement to register as a sex offender is a collateral one that need not be disclosed to the defendant in order for a plea to be valid" (quotation omitted)). And importantly, the same is true for sex offender registration under the Tennessee Sex Offender Act. *See Ward*, 315 S.W.3d at 464 ("We hold that the trial court was not required to advise the defendant of the requirement of sex offender registration because it is a remedial and regulatory measure, and therefore a collateral consequence of the guilty plea."). Ms. Laughlin's contention that her plea was not knowing or voluntary therefore does not warrant relief under § 2255.

*2. Ineffective Assistance of Counsel*

Ms. Laughlin also argues that her counsel's failure to notify her of the possibility of sex offender registration rendered his legal assistance ineffective. [Hr'g Tr. at 5:22–25; 6:1]. Along these lines, she pleads that "[a]t no time was [she] advised that she would be required to report as a sex offender." [Pet'r's Mot. at 3]. In response, the United States claims that the knowing and voluntary nature of her plea means that she "can't satisfy the strict requirements of filing for ineffectiveness." [*Id.* at 21:16–24].

The Sixth Amendment states that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." This right is the right not merely to representation but to *effective* representation. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). When a prisoner contests her sentence by raising the specter of ineffective assistance of counsel, she normally can succeed only by satisfying the familiar *Strickland* test, a two-pronged test that requires a showing of deficient performance and prejudice. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). To establish deficient performance, a petitioner must show that her counsel, through the prism of an objective standard of reasonableness, "made errors so serious that counsel was not functioning as the 'counsel' guaranteed" by the Sixth Amendment. *Id.* at 687. And to establish prejudice, a petitioner must demonstrate that her counsel's deficient performance was so serious that it deprived her of her fundamental right to due process. *Id.*

*Strickland*'s two-pronged test applies to challenges of guilty pleas based on a claim of ineffective assistance of counsel, *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), though to establish the second prong of prejudice in the context of a guilty plea, a petitioner must "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

11

have insisted on going to trial," *id.* at 59 (footnote omitted). A court has license to address the two prongs of the bipartite test in any order, and if a petitioner fails to establish either of the prongs of this test, his claim of ineffective assistance of counsel fails. *Strickland*, 466 U.S. at 697. In other words, even if a particular aspect of his counsel's performance proves to be deficient, that deficiency "does not warrant setting aside the judgment of a criminal proceeding" unless it has a prejudicial effect on the judgment. *Id.* at 691 (citation omitted). In short, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) (citations omitted).

Oftentimes, federal courts, as the United States argues, reject claims of ineffective assistance of counsel related to a defendant's guilty plea when the guilty plea is knowing and voluntary, as is true in this case. *See Winans v. United States*, No. 17-1535, 2017 WL 8315838, at *3 (6th Cir. Oct. 20, 2017) ("This ineffective-assistance claim, similar to the preceding ineffective-assistance claim, is foreclosed by [the petitioner's] knowing and voluntary guilty plea[.]"); *Brittian v. United States*, Nos. 1:08–cv–169, 1:04–cr–150, 2011 WL 1768864, at *9 (E.D. Tenn. May 9, 2011) ("[The petitioner's] plea was knowing and voluntary and his ineffective assistance of counsel claim regarding his plea fails."); *Cordell v. United States*, Nos. 4:05-cv-47, 4:00-cr-13-01, 2008 WL 4568076, at *9 (E.D. Tenn. Oct. 14, 2008) ("The Court concludes that the ineffective assistance of counsel claim fails because [the petitioner's plea was] knowing and voluntary[.]"); *see also Harrison v. Bauman*, No. 2:10–cv–188, 2012 WL 3206044, at *2 (W.D. Mich. Aug. 7, 2012) ("The Sixth Amendment claim of ineffective assistance of counsel is properly denied. [The petitioner] entered a knowing and voluntary plea of guilty[.]"). Indeed, as a general rule, "a defendant's failure to consider the numerous potential collateral consequences of a criminal conviction—*e.g.*, prohibitions on certain categories of employment, or

future limitations on constitutional rights—does not vitiate a guilty plea." *Parrino v. United States*, 655 F. App'x 399, 403 (6th Cir. 2016) (citations omitted).

But in this case, the United States' argument may be too simplistic. Ms. Laughlin's plea was knowing and voluntary without notice of sex offender registration because it was merely a collateral consequence of her plea. The fact that registration was a collateral consequence, however, does not—by that same fact alone—necessarily undermine her claim of ineffective assistance of counsel. *See Padilla*, 559 U.S. at 365 ("We, however, have never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." (quotation omitted)); *Miller v. Straub*, 299 F.3d 570, 579 (6th Cir. 2002) (stating that the Supreme Court has "eschewed" a "direct/collateral consequence categorization scheme to decide ineffective assistance of counsel claims" and is "in favor of directly applying *Strickland* to the plea context" (citing *Hill*, 474 U.S. at 57–60)); *but see Chaidez v. United States*, 568 U.S. 342, 355 (2013) ("Even in *Padilla* we did not eschew the direct-collateral divide across the board. Rather, we relied on the special 'nature of deportation' . . . . to show that '[t]he collateral versus direct distinction [was] ill-suited' to dispose of [the petitioner's] claim." (citation and quotation omitted)).

In any case, even if the Court were to stray from the general rule concerning collateral consequences and instead focus on the *Strickland* test, Ms. Laughlin's claim would be in an equally dubious spot. Ms. Laughlin—who has not pleaded ineffective assistance of counsel in her § 2255 petition and raised it for the first time in her reply brief and during oral argument—does not even mention the *Strickland* test, let alone conduct an analysis under it.[4] Her claim is prone to failure based on this shortcoming alone. *See McPherson v. Kelsey*, 125 F.3d 989, 995–

---

[4] Ms. Laughlin, for instance, does not allege prejudice anywhere in her § 2255 petition.

96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (quotation omitted)); *see also* Rules Governing § 2255 Proceedings, Rule 2(b)(1)–(2) (stating that a § 2255 petition must "specify all the grounds for relief" and "the facts supporting each ground").

Instead of offering the Court a parcel-by-parcel analysis of *Strickland*'s two prongs, she relies exclusively on the Supreme Court's decision in *Padilla*, arguing that it is analogous to her case and entitles her to collateral relief. In *Padilla*, the Supreme Court, applying the *Strickland* test, held that the defendant had adequately alleged a violation of the Sixth Amendment by claiming that counsel had failed to inform him that mandatory deportation was a consequence of his guilty plea. 559 U.S. at 364–76. In reaching this holding, the Supreme Court recited its longstanding view, under case law, that deportation is a "severe 'penalty'" because it is the "equivalent of banishment or exile," even though it "is not, in a strict sense, a criminal sanction" and "removal proceedings are civil in nature." *Id.* at 365, 373–74 (quotations and citation omitted). The Supreme Court therefore was unable to "divorce the penalty from the conviction in the deportation context." *Id.* at 366 (citation omitted).

But sex offender registration is not of the same stripe as a severe penalty—if it is even punitive to any degree. *See United States v. Shannon*, 511 F. App'x 487, 489–90 (6th Cir. 2013) (stating that "SORNA is not 'so punitive either in purpose or effect as to negate' Congress's intention to make it a civil regulatory statute, and it should not be equated with our nation's historical and traditional punishments" (quoting *Smith v. Doe*, 538 U.S. 84, 92 (2003))); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012) (stating that SORNA provides a punishment

14

only for a sex offender's failure to register); *United States v. Black*, 963 F. Supp. 2d 790, 797 (E.D. Tenn. 2013) ("This circuit has expressly rejected the argument made by Defendant that having to register under SORNA is a punitive measure."); *Ward*, 315 S.W.3d at 469 (holding that "the registration requirements imposed by [the Tennessee Sex Offender Act] are nonpunitive"). In addition, Ms. Laughlin concedes that she has no federal "case on point that says specifically that this [case] is the same type of consequence that *Padilla* addressed," [Hr'g Tr. at 23:22–24], though she points out that two state courts have extended *Padilla*'s reasoning and holding to the requirement of sex offender registration, *People v. Fonville*, 804 N.W.2d 878, 894 (Mich. Ct. App. 2011); *Taylor v. State*, 698 S.E.2d 384, 388 (Ga. Ct. App. 2010).

Even so, the Supreme Court, the Sixth Circuit, and the district courts in this circuit have all expressed reticence—or outright unwillingness—toward applying *Padilla* to cases in which a consequence other than deportation is at issue. *See Chaidez*, 568 U.S. at 355 (stating that "we relied on the special 'nature of deportation'" in deciding *Padilla* (quotation omitted)); *Parrino*, 655 F. App'x at 403 ("*Padilla* was limited to advice 'concerning the specific risk of deportation' and was based upon a long tradition that placed deportation in 'close connection to the criminal process,' which made deportation 'uniquely difficult to classify as either a direct or a collateral consequence.'" (quoting *id.* 366)); *see also Vaughn v. Holloway*, No. 16-5225, 2017 WL 7806615, at *3 (6th Cir. Sept. 18, 2017) ("*Padilla*'s reach beyond potential deportation consequence is uncertain." (citing *Chaidez*, 568 U.S. at 355)); *United States v. Parrino*, No. 3:11-MJ-218-DW, 2015 WL 4272022, at *11 (W.D. Ky. July 13, 2015) ("[T]he Court has substantial doubt that *Padilla* applies outside the factual context of the deportation scenario. Until we are advised otherwise by published federal case law, we also are disinclined to expand *Padilla* in the fashion requested by petitioner Parrino." (footnote omitted)), *aff'd sub nom. Parrino v. United States*, 655

15

F. App'x 399 (6th Cir. 2016); *Myers v. Warden, Warren Corr. Inst.*, No. 1:10-cv-343, 2011 WL 7039933, at *7 n.2 (S.D. Ohio Aug. 9, 2011) ("*Padilla* does not apply to this case, which does not involve any concerns about the risk of deportation."); *United States v. Shafeek*, No. 05-81129, No. 10-12670, 2010 WL 3789747, at *4 (E.D. Mich. Sept. 22, 2010) ("The *Padilla* decision applies to cases where defense counsel incorrectly advises a defendant that a conviction was not subject to a mandatory deportation and the defendant enters a guilty plea based on that advice.").

In fact, the Sixth Circuit, in a habeas proceeding in which it applied the *Strickland* test, declined to accept the argument that an attorney's failure to notify a defendant of sex offender registration constitutes ineffective assistance of counsel. *See Vaughn*, 2017 WL 7806615 at *3 (rejecting the petitioner's claim "that his trial counsel was ineffective for failing to adequately inform him that he would be subject to Tennessee's sex-offender registry requirements for life," because "there is no clearly established federal law holding that the Sixth Amendment right to effective counsel requires a defense attorney to give that advice"); *see generally Davis v. United States*, 417 U.S. 333, 343 (1974) (stating that "§ 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus"); *Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (acknowledging that a habeas case's reasoning "applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because § 2254 and § 2255 are counterparts of each other and the law applicable to one generally applies to the other" (citing *Davis*, 417 U.S. at 343)).

In sum, Ms. Laughlin's reliance on *Padilla* may be more worthy of consideration under the standard of review governing direct appeal, but it does not, without federal case law to back it, meet the more rigorous standard of review governing collateral attack—especially in light of

the fact that she is attempting to nullify a plea agreement. *See United States v. Timmreck*, 441 U.S. 780, 784 (1979) ("[T]he concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." (footnote omitted)). Because her claim is not a legally cognizable one, the Court will not conduct an evidentiary hearing to resolve the factual issue of whether her counsel did or did not advise her that her guilty plea could require her to register as a sex offender. *See Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (stating that an evidentiary hearing is unnecessary if "the record conclusively shows that the petitioner is entitled to no relief" (quotation omitted)); *see also Dempsey v. United States*, No. 18-5464, 2018 WL 5819501, at *1, *3 (6th Cir. Aug. 14, 2018) (affirming the district court's decision that the petitioner's claims "failed as a matter of law" and therefore did not warrant an evidentiary hearing).

### 3. The Probation Office's Enforcement of the Court's Judgment

At this point in the analysis, the Court cannot help but observe that Ms. Laughlin directs her assertions of wrongdoing at the Probation Office rather than the Court itself. She accedes that the Court never ordered her—in its criminal judgment or in its revocation judgments—to register under SORNA or the Tennessee Sex Offender Act, [Pet'r's Mot. at 8; Joint Status Report, Doc. 12, at 2–3], and she refers to the Court's criminal judgments as "correct," [Pet'r's Mot. at 8]. But she accuses the Probation Office of wrongfully "order[ing]" and "requir[ing]" her to register under the Tennessee Sex Offender Act, and she disapproves of this "punishment" and "punitive sanction" as an "after-the-fact addition of supervised release conditions." [*Id.* at 5–6, 8]. She insists that "[i]nclusion of any special conditions of supervised release lies solely with this Court." [*Id*. at 8]. The United States, on the other hand, argues that § 2255 is not a

17

"mechanism" that can provide Ms. Laughlin with relief under the facts of this case. [Hr'g. Tr. at 22:11].

Because Ms. Laughlin does not contend that the Court itself committed any error—constitutional, fundamental, or otherwise—and instead only questions the subsequent actions of the Probation Office, the Court agrees that her claim does not come within § 2255's narrow limits. *See Addonizio*, 442 U.S. at 187 ("Whether or not the Parole Commission action in this case was constitutional . . . there is no claim that the action taken by the sentencing judge was unconstitutional . . . . According to all of the objective criteria—federal jurisdiction, the Constitution, and federal law—the sentence was and is a lawful one."). Although Ms. Laughlin is correct that "only courts can impose punishment upon people convicted of crimes," *United States v. Logins*, 503 F. App'x 345, 349 (6th Cir. 2012) (citation omitted), her portrayal of sex offender registration as a "punishment" and "punitive sanction" has no support in case law, *Shannon*, 511 F. App'x at 489–90; *Felts*, 647 F.3d at 606; *Black*, 963 F. Supp. 2d at 797; *Ward*, 315 S.W.3d at 469. And even if the Probation Office "exceed[ed] [its] delegation of supervision authority," as Ms. Laughlin alleges, the upshot of that transgression may affect how the Court's judgment is executed, but it in no way affects the lawfulness of that judgment—or put differently, the fact that the judgment is, as Ms. Laughlin says, "correct," *see Addonizio*, 442 U.S. at 187 ("The change in Parole Commission policies . . . affected the way in which the court's judgment and sentence would be performed but it did not affect the lawfulness of the judgment itself—then or now.").

Although § 2255—based on this case's particular facts—is not a legal expedient for undoing Ms. Laughlin's status as a sex offender under the Tennessee Sex Offender Act, she is not without recourse. Under Tennessee Code Annotated § 40-39-207(a)(1), Ms. Laughlin can

petition the TBI for termination of her registration requirement, though "no sooner than ten (10) years after termination of active supervision on probation, parole, or any other alternative to incarceration." While this subsection does not provide Ms. Laughlin with the immediate relief that she might have hoped for, it does offer her disabuse from her misconception that her registration is necessarily a "lifetime" requirement. [Pet'r's Mot. at 6].

If Ms. Laughlin, at the appropriate time, elects to pursue termination of her registration requirement under Tennessee Code Annotated § 40-39-207(a)(1), the Court fully expects the parties, in addition to the Probation Office, to work together to help her accomplish that goal— in deference to the fact the Court, under 18 U.S.C. § 3583(d), made no finding that she met the requirements for sex offender registration. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

### B. Certificate of Appealability

Lastly, the Court must determine whether to issue a certificate of appealability, which is necessary for Ms. Laughlin to appeal its ruling. 28 U.S.C. § 2253(a), (c)(1)(B). The Court may issue a certificate of appealability only when a petitioner "has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). To make this showing when a court has rejected a petitioner's constitutional claim on the merits, that petitioner must demonstrate that reasonable jurists would find the court's assessment of those claims "debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Having considered the merits of Ms. Laughlin's claims, in which she alleges violations of the Fifth and Sixth Amendments, the Court does not conclude

that reasonable jurists would find its rejection of her claims debatable or wrong. The Court will therefore decline to issue a certificate of appealability to Ms. Laughlin.

## IV. Conclusion

As the petitioner under § 2255, Ms. Laughlin fails to meet her burden of establishing that her conviction and sentence were in violation of the Constitution, or that a fundamental defect resulted in either a complete miscarriage of justice or an egregious error. Ms. Laughlin's Motion to Vacate, Set Aside or Correct Her Sentence [Doc. 1] is therefore **DENIED**, and this action is hereby **DISMISSED with prejudice**. The Court will enter an order consistent with this opinion.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
